## Rachel Skillman *vs.* John G. Skillman.

At common law, the husband is entitled not only to all the personal property which the wife owns at the time of her marriage, but to all that she acquires by her skill or labor during the coverture.

Though a gift from the husband to the wife is void at law, it will be protected in equity as against the husband, and if made by virtue of an ante-nuptial agreement, as against his creditors also.

A married woman purchasing land with the knowledge and approval of her husband, the title being taken in the name of the husband, and he executing a mortgage thereon for the cost of a dwelling subsequently erected, will acquire no equitable title to the premises, as against the husband's creditors, on the ground that she mainly contributed to paying off the mortgage from the avails of her labor during coverture.

*Leupp*, for complainant.

*Speer*, for defendant.

THE CHANCELLOR. The bill charges that, in the year 1847, the complainant, with the knowledge and approval of her husband, Daniel Skillman, (who was a man of small means and dependant upon his labor for support)

purchased a small lot in the city of New Brunswick, for the sum of $175, with the design of erecting thereon a dwelling for the use of herself and her family; that the said Daniel Skillman paid the purchase money for the said lot, and the same was conveyed to him by deed, dated the 8th day of January, 1847; that a dwelling was forthwith erected upon the said lot at a contract price of $675, for $500 of which a mortgage was given by Daniel Skillman and his wife, the complainant, upon the said house and lot; that the interest upon the said mortgage, up to May, 1854, together with $100 of the principal, was paid by the complainant from her own earnings; that in April, 1851, the husband subscribed for two shares in the Mechanics Building and Loan Association of New Brunswick, and that the complainant contributed from time to time of her own earnings to pay the monthly instalments upon said shares; that, in 1858, a loan of $400 was obtained from the said association to satisfy the original mortgage upon the said house and lot, and that the contributions for interest upon the said loan and the monthly payments to the said association have been principally paid by the complainant out of her earnings, the husband contributing from the avails of his labor but little to those objects; that the payments thus made, together with the value of the two shares of stock in the building association, are nearly sufficient to extinguish the mortgage debt upon the said house and lot; that the complainant has thus, from her own earnings, derived from keeping boarders and from washing and ironing, contributed largely toward the building of said house and keeping it in repair during the lifetime of her husband, and without the knowledge of any encumbrance upon the said premises; that Daniel Skillman, the husband of the complainant, died on the 20th of June, 1860; that since his death the said house and lot have been advertised for sale by the sheriff of the county of Middlesex, by virtue of an execution issued out of the Supreme Court upon a judg-

ment confessed by the said Daniel Skillman to his brother, John G. Skillman, on the 24th of May, 1850; that the said judgment was fraudulent, and was entered for the purpose of protecting the property of the said Daniel Skillman from his creditors, and was without consideration, equitable or legal.

The bill prays that the interest of the complainant in the premises may be protected; that the defendant may be restrained from making sale of the said premises, and that the said judgment and execution may be set aside.

An injunction issued, pursuant to the prayer of the bill, restraining the sale by virtue of the said execution until the further order of the court.

The answer of John G. Skillman denies all fraud in the entry or procurement of his judgment against the said Daniel Skillman; professes entire ignorance in regard to the advances alleged to have been made by the complainant toward the purchase of the said house and lot, and insists that, if such advances were made as set out in the complainant's bill, she thereby acquired no separate interest in the said real estate.

The defendant now asks a dissolution of the injunction.

The complainant asks relief against the judgment at law on two distinct grounds, viz. 1, because she has an equitable interest in the property levied upon to satisfy the judgment; 2, because the judgment is fraudulent.

The fraud is fully denied by the answer. The complainant, moreover, has no standing in court, and no right to question the bona fides of the judgment, unless she has some interest in the property to be prejudiced by the judgment. She does not claim dower in the property, nor could such claim be in anywise affected by the judgment and execution against her former husband. If the property in question be sold to satisfy the judgment against Daniel Skillman, the right of the complainant, as his widow, to dower is not affected.

Nor is the case at all strengthened by the prayer of the

complainant to have the right of her infant daughter, the only child and heir at law of Daniel Skillman, protected against the operation of the judgment. The daughter is not a party to the bill. No decree can be made either for or against her interests. The bill does not purport to be filed in her name or on her behalf. On the contrary, the claim of the complainant, as set out in the case, is not only distinct from and independent of the title of the daughter as heir at law of Daniel Skillman, but is inconsistent with it. She claims to have an equitable title to the property superior to that of her husband at the time of his death, which, if valid, is fatal to the title of his heir at law.

It seems evident, therefore, that the only equity of the complainant's bill, and her sole ground of relief, rests upon her claim to an equitable estate in the house and lot in question. If she have no such estate, she has no ground upon which she can contest the validity or bona fides of the judgment at law.

The complainant does not claim that she owned any property, real or personal, at the time of her marriage, or that she ever received any property by gift, grant, devise, or bequest during her coverture. The claim is, that the separate property consisted exclusively of her earnings, the fruits of her own industry acquired during her coverture, and by and with the consent and approbation of her husband invested in the erection and improvement of the dwelling house and lot in question. The claim is not within the protection of the statute. *Nix. Dig.* 466. It must be sustained, if at all, upon general principles of equity and upon the rules of the common law, independent of the statute.

At common law, the husband is entitled not only to all the personal property which the wife owns at the time of her marriage, but to all that she acquires by her skill or labor during the coverture. His right to her services and to the proceeds of her skill and industry is absolute.

He may sue for and recover them in his own name. If paid to the wife, without the authority and against the direction of the husband, he may nevertheless recover them. *Buckley* v. *Collier, Sal.* 114; *Glover* v. *Proprietors of Drury Lane*, 2 *Chitty* 117; *Bac. Ab. Baron and Feme, F. ; Reeves' Dom. Rel.* 63; *Clancy on Husb. and Wife* 3.

If, therefore, the complainant has acquired any separate property in her earnings, it must be by gift from her husband. Though, by reason of the unity of person subsisting between them, such gift from the husband to the wife is void at law, it will be protected in equity as against the husband, and if made by virtue of an ante-nuptial agreement as against his creditors also. *Slanning* v. *Style*, 3 *P. Wms.* 337; *Lucas* v. *Lucas*, 1 *Atk.* 270; *Walter* v. *Hodge*, 2 *Swanst.* 109; *Clancy on Husb. and Wife*, 276, 277; 1 *Bl. Com.* 442, *note* 29.

The husband will be treated in equity as a trustee of the property for the benefit of the wife.

But in such cases the fact of the making of the gift, and that it was intended for the use of the wife as her separate property, must be clearly established.

To constitute a valid gift, there must be some clear and distinct act by which the husband has divested himself of the property, and engaged to hold it as trustee for the separate use of the wife. *McLean* v. *Longlands*, 5 *Vesey* 78; *Mews* v. *Mews*, 15 *Beavan* 529 (21 *Eng. Law and Eq. Rep.* 556).

Applying these principles to the case under consideration, I find nothing to justify the claim of the wife to have this property treated as her separate estate. The husband bought the land, paid the purchase money, and took the title in his own name. He paid part of the contract price for building the house, and gave a mortgage upon the premises for the residue—his wife, as is usual, joining in the mortgage. He bought the shares of the building and loan association in his own name; he contributed, to some extent, from the avails of his labor toward the

payment of the debt; the title remained in him at his death. The facts relied upon in support of the complainant's claim are, that the property was purchased at her instance to secure a home for herself and her family; that she made the negotiation for the purchase; that, by means of her industry and economy, she contributed mainly toward the payment of the interest on the debt, the monthly payments on the shares of the building association, and the accumulation of means for the extinguishment of the principal. The price of the lot and some portion of the debt incurred in erecting the building, it is admitted, were paid by the husband; and if a clear case of gift were alleged or proved there might be serious difficulty in ascertaining upon the case, as made by the bill, the precise extent of the wife's interest in the land. But conceding that the wife had not paid a part, but the entire cost of the land and building from the avails of her industry with the knowledge and approbation of the husband, the complainant's case is not materially strengthened. The question still remains, did the husband intend that that property should become the separate property of his wife. He approved of her accumulating it, of its being applied by her to paying the debt incurred in erecting the house, and thus securing a home for the family. But the avails of her labor were his property, and they were applied in payment of his debt and in the extinguishment of an encumbrance upon property the title to which was in him. How, then, do these acts indicate a disposition on the part of the husband to give the property to the wife as her separate property? It presents the ordinary case of persons in the humbler walks of life, with limited means, securing for themselves the comforts of a home by the united industry of the husband and wife, or it may be by the industry, economy, and self-denial of the wife alone. However strongly it may appeal to our sympathy, it affords no ground upon which the court can subvert the well settled

rules of law, and declare that the husband shall cease to be the owner and become the trustee for the benefit of his wife of the avails of her labor.

In *Raybold* v. *Raybold*, 8 *Harris' R.* 308, it was decided that the fact that real estate was paid for with the earnings and savings of the wife, does not give her a trust estate in the property, and that money thus acquired is not the property of the wife within the meaning of the act relative to the estates of married women, but is the property of the husband.

And even where a married woman carries on business in her own name, the avails of the business are not protected by statutes similar to our own in relation to married women, but they remain the property of the husband, liable to be seized and taken in execution for the payment of his debts. *Lovett* v. *Robinson*, 7 *Howard's Pr. R.* 105; *Avery* v. *Doane*, 3 *Am. Law Reg.* 229; *Freeman* v. *Orser*, 5 *Duer* 477.

The law, in this respect, has been altered by the recent statutes of the state of New York. *Session Laws*, 1860, *chap.* 90, *p.* 157.

Considering the complainant's case entirely irrespective of the conflicting claim of the husband's creditor—regarding it as a question solely between herself and the heirs of her husband—there is nothing in the case to justify the court in treating the property as the separate property of the wife, in exclusion of the title of the heir. The case is much stronger against the complainant when urged against the rights of the creditors.

The injunction must be dissolved, and the bill dismissed for want of equity.

In accordance with the decision of the master of the rolls in *Mews* v. *Mews*, 15 *Beavan* 529, the bill is dismissed without costs.